FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

MAY 1 1 2012

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:                              DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SYDNEY SUKUTA,                        )
                                      )
            Plaintiff,                )
                                      )       3:11-cv-00847-RCJ-WGC
      vs.                             )
                                      )
DHI MORTGAGE CO., LTD. et al.,        )       ORDER
                                      )
            Defendants.               )
_____)

This is a standard foreclosure case involving one property. The Complaint filed in state court lists three causes of action: (1) Unlawful or Fraudulent Foreclosure; (2) Declaratory Relief; and (3) Injunctive Relief. The case is not part of Case No. 2:09-md-02119-JAT in the District of Arizona but appears eligible for transfer. Defendants HSBC Bank USA ("HSBC") and DHI Mortgage Co. ("DHI") have separately moved to dismiss, and Plaintiff Sydney Sukuta has moved to remand. For the reasons given herein, the Court denies the motions.

I.   THE PROPERTY

Sydney Sukuta and Sandra Adams gave lender DHI a promissory note for $286,495, secured by a deed of trust against real property at 3726 Altesino Dr., Reno, NV 89436 (the "Property"). (*See* First Deed of Trust ("FDOT") 1–3, Mar. 21, 2006, ECF No. 1-3, at 8). Ticor Title of Nevada ("Ticor Title") was the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") was the lender's "nominee." (*See id.* 2). Sukuta and Adams gave DHI a second promissory note secured by the Property for $71,623, also with Ticor Title as trustee. (*See* Second Deed of Trust ("SDOT") 1, Mar. 21, 2006, ECF No. 1-4, at 12).

1  Assembly Bill 284's ("AB 284") amendments to Nevada Revised Statutes ("NRS")
2  Chapters 106 and 107 do not apply to this foreclosure. The only assignment was made before
3  October 1, 2011, and the notice of default was also filed before that date. On May 20, 2011, the
4  Governor approved AB 284, which, *inter alia*, added the following conditions to a trustee's sale
5  under NRS section 107.080(2)(c):

> The beneficiary, the successor in interest of the beneficiary or the trustee first executes and causes to be recorded in the office of the recorder of the county wherein the trust property, or some part thereof, is situated a notice of the breach and of the election to sell or cause to be sold the property to satisfy the obligation; **which, except as otherwise provided in this paragraph, includes a notarized affidavit of authority to exercise the power of sale stating, based on personal knowledge and under the penalty of perjury:**
>
> **(1) The full name and business address of the trustee or the trustee's personal representative or assignee, the current holder of the note secured by the deed of trust, the current beneficiary of record and the servicers of the obligation or debt secured by the deed of trust;**
>
> **(2) The full name and last known business address of every prior known beneficiary of the deed of trust;**
>
> **(3) That the beneficiary under the deed of trust, the successor in interest of the beneficiary or the trustee is in actual or constructive possession of the note secured by the deed of trust;**
>
> **(4) That the trustee has the authority to exercise the power of sale with respect to the property pursuant to the instruction of the beneficiary of record and the current holder of the note secured by the deed of trust;**
>
> **(5) The amount in default, the principal amount of the obligation or debt secured by the deed of trust, a good faith estimate of all fees imposed and to be imposed because of the default and the costs and fees charged to the debtor in connection with the exercise of the power of sale; and**
>
> **(6) The date, recordation number or other unique designation of the instrument that conveyed the interest of each beneficiary and a description of the instrument that conveyed the interest of each beneficiary.**

23  Assemb. B. 284 § 9, 76th Leg., Reg. Sess. (Nev. 2011) (emphasis added). The emphasis in the
24  above quotation indicates the added language. The amendments were originally to become
25  effective on July 1, 2011, *see id.* § 15, and were to apply to all notices of default filed on or after

that date, *see id.* § 14.5(4). However, on June 20, 2011, the Governor approved Assembly Bill 273 ("AB 273"), which amended the effective date of AB 284 to October 1, 2011 and amended § 14.5 of AB 284 to provide that the amendments to NRS section 107.080 would apply only to notices of default filed on or after October 1, 2011. *See* Assemb. B. 273 § 5.9, 76th Leg., Reg. Sess. (Nev. 2011). Furthermore, Chapter 106 requires the recordation of any assignments of debt secured by a deed of trust before a trustee's sale may occur:

> Any assignment of a mortgage of real property, or of a mortgage of personal property or crops recorded prior to March 27, 1935, and any assignment of the beneficial interest under a deed of trust **must** be recorded, **in the office of the recorder of the county in which the property is located**, and from the time any of the same are so filed for record shall operate as constructive notice of the contents thereof to all persons. **A mortgage of real property, or a mortgage of personal property or crops recorded prior to March 27, 1935, which has been assigned may not be enforced unless and until the assignment is recorded pursuant to this subsection. If the beneficial interest under a deed of trust has been assigned, the trustee under the deed of trust may not exercise the power of sale pursuant to NRS 107.080 unless and until the assignment is recorded pursuant to this subsection.**

Assemb. B. 284 § 1, 76th Leg., Reg. Sess. (Nev. 2011) (emphases added). The emphasis in the above quotation indicates the added language. Like the amendments to NRS section 107.080, the amendments to NRS section 106.210 were originally to go into effect on July 1, 2011. *See id.* § 15. However, AB 273 changed the effective date of the amendment to October 1, 2011 and also amended the application of the recordation requirement to assignments made on or after October 1, 2011. *See* Assemb. B. 273 § 5.9, 76th Leg., Reg. Sess. (Nev. 2011).

MERS assigned the first note and FDOT to HSBC, as trustee for a mortgage-backed security. (*See* Assignment, Mar. 21, 2011, ECF No. 1-6, at 1). HSBC substituted Western Progressive, LLC ("Western") as trustee. (*See* Substitution, Mar. 21, 2011, ECF No. 1-6, at 4). Ticor Title filed the first notice of default ("FNOD") as agent for LSI Title Agency ("LSI"), in turn as agent for Western, based on a default on the FDOT of $11,086.81 as of January 18, 2011. (*See* FNOD, Jan. 18, 2011, ECF No. 1-5, at 7). LSI, as agent for Western, rescinded the FNOD. (*See* Rescission, Mar. 16, 2011, ECF No. 1-5, at 11). The same day, LSI filed the second notice

of default ("SNOD") as agent for Western, based upon a default on the FDOT of $14,705.37 as of March 16, 2011. (*See* SNOD, Mar. 16, 2011, ECF No. 1-5, at 14). Western scheduled a trustee's sale for October 26, 2011. (*See* Notice of Trustee's Sale, Sept. 19, 2011, ECF No. 1-6, at 8). The Property is not eligible for the state Foreclosure Mediation Program ("FMP"). (*See* FMP Certificate, Aug. 16, 2011, ECF No. 1-6, at 6).

## II.   ANALYSIS

The foreclosure may have been statutorily improper. *See* Nev. Rev. Stat. § 107.080(2)(c). The FNOD is inapposite, as it has been rescinded. The SNOD, however, appears defective in at least two respects. First, there is no evidence of LSI's agency for Western apart from LSI's own statement on the SNOD. Second, even if Defendants could show that LSI was Western's agent when it filed the SNOD on March 16, 2011, that was five days before HSBC obtained the beneficial interest and substituted Western. The Court will therefore deny the motions to dismiss, except that it will dismiss DHI, because the lender was not the beneficiary at the time the allegedly improper foreclosure occurred.

Next, Plaintiff argues that federal jurisdiction is lacking because there is no federal cause of action pled and a lack of complete diversity. It is clear there is no federal cause of action, and the National Bank Act does not preempt the claims. Plaintiff alleges that Defendant Ticor Title of Nevada is a Nevada citizen and that its presence therefore destroys complete diversity. Plaintiff argues that Ticor Title of Nevada executed the NOD. It appears that "Ticor Title - Reno" is the entity that actually recorded the FNOD, though it did not itself execute the NOD. (*See* FNOD 1). However, the rescinded FNOD is inapposite, and it was Ticor Title's only connection whatsoever to the foreclosure. LSI is the entity that actually recorded the SNOD. (*See* SNOD 1). Ticor Title of Nevada is in fact a domestic corporation. *See* Nevada Secretary of State, Nevada Business Search (Mar. 2, 2012, 11:25 AM), http://nvsos.gov/sosentitysearch/CorpSearch.aspx. But because it is clear that no claim lies against Ticor Title in this case, it is

fraudulently joined, and its citizenship is discounted in the diversity analysis. The Court therefore denies the motion to remand.

Plaintiff also argues that his declaratory relief claim cannot be heard in federal court because it concerns issues of state law. The Court rejects this argument. Plaintiff also asks the Court to abstain because state foreclosure laws are a developing area of law. This is true, however, most of the developments have been in the state and federal district courts. The Nevada Supreme Court has published no decisions interpreting Chapter 107 directly, but only two cases published in the summer of 2011 which concerned the FMP. This Court will of course apply any rulings of the Nevada Supreme Court in this area of law. *See generally Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). But while *Erie* determines which law governs in diversity, it did not abolish the right of diverse defendants to remove cases arising under state law.

Next, Plaintiff implies that *Pullman* abstention is appropriate, but there is no constitutional issue to be avoided in this case by certification of the interpretation of Chapter 107 to the Nevada Supreme Court. *See, e.g., Pearl Inv. Co. v. City & Cnty. of S.F.*, 774 F.2d 1460, 1463 (9th Cir. 1985) (citing *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 498 (1941)). And in any case, Plaintiff asks the Court to remand the case to the state district court, not to certify it to the state supreme court.

In successive motions, Plaintiff has asked the Court to permit several other homeowners to intervene, to consolidate the cases, and to certify certain questions to the Nevada Supreme Court. The Court denies these motions. The proposed intervenors are not parties with any interest in the present case except in the sense that their unrelated cases may turn on the same legal issues. Nor is there any good reason to consolidate several unrelated cases. The Court has ruled in hundreds of similar foreclosure cases, all of which turn on their own particular facts. Finally, certification tot he Nevada Supreme Court will serve no useful purpose. That Court may grant certiorari to any similar case in the state district courts if it desires to answer questions

concerning Chapters 106 or 107, and it has had ample opportunity over the past several years to do so. Certification from this Court, even if accepted, would only serve to delay the present case for a year or more where the answers are relatively straightforward without further guidance.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 8) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 3), the Motion to Remand (ECF No. 9), the Motion to Certify (ECF No. 26), and the motion to Intervene and Consolidate (ECF No. 28) are DENIED.

IT IS SO ORDERED.

Dated this 11th day of May, 2012.

_____
ROBERT C. JONES
United States District Judge